HENRY BARRICKMAN *vs.* THE COMMISSIONERS OF HARFORD COUNTY.—*December* 1839.

The fourth section of the act of 1827, chap. 81, confers upon the Commissioners of Harford county, all the power they possess in relation to the public roads of the county, and gives them the same jurisdiction formerly belonging to the levy court.

The jurisdiction being limited, must be administered in the manner, and according to the terms of the law creating it, and these appear by the act of 1821, chap. 152, sections 1 and 2.

The commissioners can neither open, alter, change or close a road, but on the application in writing of citizens of the county, nor can they ascertain damages, except upon the report of commissioners appointed to value and assess them, or by the verdict of a jury, if an appeal be taken.

A verbal contract made by the commissioners so appointed, though subsequently assented to by the county commissioners, will not control their formal report, that no damage has been sustained by the party through whose land a road is laid out.

Where a special jurisdiction is created, and its mode of proceeding, and the extent of its powers are particularly defined, and it exceeds it jurisdiction with the concurrence of a party who is thereby injured, such party is not entitled to compensation by requiring the special jurisdiction either to pay damages, or do some other act beyond its jurisdiction.

APPEAL from the Court of Chancery.

The bill in this cause was filed on the 22nd December 1835, by *Henry Barrickman*, and alleged, that upon application of sundry persons to *the Commissioners of Harford county*, representing that at a certain period of the year, the road leading from *Gunpowder Neck* to *Baltimore*, by the way of Joppa, was impassable, the said commissioners on the 27th July 1830,

did order that a commission should be directed to *Stephen G. Raphael, James Reardon* and *Thomas I. Caldwell,* to lay out a new road, according to the prayer of the petitioners; that a commission was issued, a new road laid out and a full report of the proceedings of the commissioners made. That the old road being the one complained of, ran through the complainant's farm about a mile, and that the new road ran for the same, or a greater distance through complainant's plantation; that the commissioners, *Raphael, Reardon* and *Caldwell,* when they were about to locate the new road, proposed to your orator to take the old road in lieu of the new one, for the whole distance that the old one ran through the farm of your orator, and to which said proposition he assented. That after said commissioners had located the new road, and made out their report thereof, they applied to complainant to give them a memorandum in writing, relinquishing all claim to any damage, and drew up the same at the foot of said report, and required him to sign the same; that upon the faith and confidence of the arrangement herein before mentioned, that he should have the old road, he signed the said paper, and that the sole inducement for signing said relinquishment of damages for the new road, was the express assurance and verbal agreement, that the county would surrender absolutely to him the old road, and all and singular its rights over the same. That afterwards, on the 16th August 1830, the report of the location of the new road, with the relinquishment of damages aforesaid, in consideration of the surrender of the old road, was ratified by the Commissioners of *Harford* county, the new road opened, made passable and used by the public, and the old road surrendered to your orator by *S. G. Raphael,* the agent of the said commissioners of *Harford* county; that since the opening of the new, and surrender of the old road, the said commissioners have unjustly and wrongfully reclaimed the said old road, and appointed a supervisor thereof, whereby complainant is deprived of the same, and the exclusive right thereto, which they had expressly assured to him for a full and valuable consideration—prayer for a decree, specifically enforc-

ing the aforesaid agreement, or compensation in damages to the value of the old road, if the commissioners have a right to reclaim the same, and for general relief. Subpœna for the commissioners of *Harford* county, &c.

The defendants answered the bill, admitting there was a petition to make a road through the lands of the complainant, and that a commission issued thereon as stated; that the commissioners appointed, returned a paper appended to their report, purporting to be a relinquishment on the part of complainant, of all claim for damages; that there is no proceeding entered on their books, or records, to show, that said complainant relinquished all claim to damages, in consideration of his having the bed of the old road; that the only course the defendants could pursue, in the exercise of the powers vested in them, was to issue a commission, and refer the damages which landholders might sustain, to the judgment of special commissioners, which was done in this case, and that no damages were awarded to complainant; the new road, according to the commissioner's return, conferring advantages equivalent to the disadvantage it would inflict on landholders; that after the new road was laid out, it was ascertained it did not serve the public convenience as well as the old one, it was therefore abandoned, and the use of the old road resumed; that the commissioners of survey, had no authority to make contracts, so as to bind these defendants to pay damages.

The various proceedings referred to in the bill and answer, were established under a commission to take evidence, and the Chancellor, (Bland,) on the 13th November 1837, dismissed the bill with costs, from which the complainant appealed to this court.

The cause was argued before Archer, Dorsey and Chambers, J.

Constable for the appellant.

1st. The defendants had authority to enter into the contract sought to be enforced.

By the act of 1827, ch. 81, sec. 3, the defendants were created a corporation and clothed with power to "hold, sell and convey all kinds of estates, property and effects, and of doing all such acts as shall be necessary to the exercise of all powers vested in them, &c.," and by the fourth section they are vested with all the "power, rights and privileges of the justices of the levy court." The act of 1821, chap. 152, sec. 1, and the supplement thereto of 1822, chap. 19, expressly confers on the levy court the "power to open any new road, or *shut up*, or alter any *old* road." From an examination of these statutes, there can be no doubt of the defendants competency to make the contract. They had full power to "shut up any old road" and to "open any new one," and being liable for the damages that a landholder might sustain, by the opening of a new road over his farm, they could treat for their liquidation or relinquishment in the same manner as an individual applying for a private way might. They could offer other rights instead of money, and if in their judgment the public interest would be subserved by surrendering an old road for the right of way for a new one, they might do so. That portion of the old road which was the consideration for the relinquishment of damages, belonged in *reversion* to the complainant, and would have passed to him in *possession* upon the non user of it by the public, but in order to secure its enjoyment, the complainant agreed to surrender other land deemed by defendants more advantageous for the scite of the road; and after defendants have taken possession of this, and rendered it unfit for cultivation, by excavating and grading a road, and imposed on complainant the expense of much additional fencing, they refuse to be bound by the agreement, and reclaim the bed of the former road. Manifestly in fraud of the rights of complainant.

2nd. That defendants made the contract with complainant is fully established. The commissioners appointed to lay out the new road, and expressly empowered by the 2nd section of the act of 1822, chap. 152, to assess the damages complainant might sustain thereby, agreed to give him the bed of the

old road within the limits of his farm, in satisfaction of damages; and upon this assurance obtained from him a relinquishment of damages in writing, which they append to their report to defendants, who, with a full knowledge of the facts ratified and confirmed it. Even if they had not previously given such authority to the commissioners, their adoption of the agreement bound them as effectually, and gave the complainant a clear right to have it observed and executed in good faith. If it subsequently appeared to them, that the new road would not answer so good a purpose as the old one, they were competent to have ordered another commission and caused the old road to be opened again, but in so doing they were bound to treat it as the private property of complainant, and to have made him just compensation for its appropriation again to the public *use.*

All the advantages of the contract were on the side of defendants, for if they had proceeded to open the new road and have shut up the old one, without such an agreement with complainant in respect to damages, he would have become entitled to the bed of the old road and also to damages for the land occupied by the new one.

We insist therefore that the complainant was entitled to have the contract performed, and the Chancellor should have enjoined defendants from exercising or authorizing the exercise of any authority or right in reference to the old road—or he should have decreed the complainant compensation in damages equal to the value of the land occupied by the old road and cost of fencing erected upon the faith of the agreement with the defendants. Amount proved under commission, and for which complainant asked a decree, was $312 $\frac{50}{100}$.

There is no doubt as to the jurisdiction of the Court of Chancery in such a case. It may decree the specific performance of a general covenant of indemnity though it sound only in damages. *Champion vs. Brown,* 6 *John. Chan. Rep.* 406, and assess damages for its non-performance, *McFerran vs. Taylor & Massie,* 3 *Cranch* 270, *S. C.* 1 *Peters' Cond. Sup. C. Rep.* 525. In this case the damages were assessed by a

jury, but that was under the peculiar practice adopted in Kentucky, of requiring the intervention of a jury to ascertain facts in chancery suits.

If the Court of Chancery could not satisfactorily determine upon the evidence in the case, the amount of damages complainant should recover, it ought to have retained his bill, and awarded an issue of *quantum damnificatus.* 1 *Eq. Ca. Abr.* 18. 1 *P. Wms.* 570. 2 *Bro. Ch. Rep.* 341. 1 *Vern.* 189. 1 *Ves. Jun.* 329. 12 *Ves.* 395, *and Phillips vs. Thompson,* 1 *John. Ch. Rep.* 132. The testimony, however, seems to be clear and full as to the extent of complainant's damages, and presents a case which the Court of Chancery in England would refer to a master instead of awarding an issue to be tried by a jury.

The appellant therefore submits that the decree of the Chancellor dismissing his bill is erroneous and should be reversed, and that this court make a decree in the premises, allowing him the amount of damages which the proof in the cause shews that he has sustained.

OTHO SCOTT for the appellee.

Referred to the act of 1821, ch. 152, sec. 1 and 2, and insisted there was no contract established in this case. That *Barrickman* had only stipulated for what in point of law, he was entitled to on the opening of the old road. The public could use the old road, until the new one was opened. The court cant decree specific performance of the agreement. It is imperfect. The commissioners of the county can only pay in money for the advantages of the road. Their powers were limited. When the new road was opened, the complainant was compensated. In that mode he received what he was entitled to. A Court of Chancery cannot by a decree for specific performance, oblige an inferior jurisdiction to perform one of its duties, on the ground that a contract has been made to discharge such duty. The mode of reaching the inferior jurisdiction is by mandamus. They are thus caused to perform legal duties; of course there can be no decree for dama-

ges.   The commissioners had no power to contract for a re-linquishment of damages.

CHAMBERS, J., delivered the opinion of the court.

The facts in this case as evidenced by the testimony in the cause, show that the appellants property has been injured by the non-performance of an agreement, made as he supposed with persons competent to enter into it.   His counsel has endeavored to establish the proposition, that the appellees were competent to bind themselves by the contract alleged in the bill, but we think he has failed.   The commissioners can have no power but what is conferred upon them by the act of Assembly, whereby they are created.   The 3rd section of the act of 1827, ch. 81, is referred to, as authorizing them to take, hold, sell and convey all kinds of estate, property and effects, and of doing all such acts as shall be necessary to the exercise of all powers which are, or shall be vested in them by this act, or any other act of Assembly, as fully and effec-tually as corporate bodies may or can lawfully and rightfully do.   Without stopping to inquire how far the general expres-sions, in the former part of this section are to be restrained by what follows, we do not find here, any authority particularly relating to such a contract as the one alleged.

The powers, and as we suppose, all the powers possessed by the commissioners in relation to the public roads of the county, are derived to them by the provisions of the fourth sec-tion of the act referred to, which vests in them the jurisdiction formerly belonging to the levy court of the county.

That jurisdiction enables them, as it previously enabled the levy court, to "open new roads, or alter, change or shut old roads," upon application to them by petition of certain citi-zens of the county, and in the manner prescribed.

The jurisdiction being limited, must be administered in the manner and according to the terms of the law creating it. The act of 1821, ch. 152, sec. 1st and 2nd, will show what these are.   It is sufficient to say, that the commissioners can neither open a road, nor alter, change or close one, but after

an application in writing by citizens of the county, nor can they ascertain damages, but by the report of commissioners appointed to value and assess them, or by the verdict of the jury directed to be called, if an appeal be taken. Unfortunately for the appellant, both he and the commissioners appear to have entertained the erroneous opinion, that the verbal contract and arrangement made by the three commissioners, appointed by the county commissioners, and subsequently assented to by the county commissioners, would be binding so as to control the written and formal report of the three commissioners, finding that the appellant had sustained no damage as well as the formal acknowledgment of the appellant, returned with their commission, in which he relinquishes all claim to damages. We attribute the proceeding of the commissioners to an erroneous opinion of their powers, because they could not have designed a personal injury to the appellant, and because unless they supposed they were right, their conduct would subject them to imputations and censure, which are neither made, nor as we are persuaded, merited; nor do they appear to have been ever applied to, and consequently they have never refused to do the only thing in their power to redress the appellant, by shutting up the road when regularly clothed with jurisdiction by a compliance with the preliminary requisites of the law.

In the view here taken of the case, the commissioners of *Harford* could not do otherwise than they have done; they could not assess damages, because the three commissioners had filed their formal report, that no damages were sustained by the appellant, who so far from using the means provided by the act to reverse their opinion, had filed his written relinquishment. They could not void appointing a supervisor for the old road, when they discovered their error, because that road continued to be one of the public roads of the county, and as such, it was their duty to provide for its repair. No application was made to shut it up, and they could not shut it up, without application in the mode prescribed.

We cannot adopt the doctrine, that where a special juris-

8    v. 11

diction is created, and its mode of proceeding, and the extent of its powers are particularly defined, and it exceeds its juris- diction with the concurrence of a party, who is thereby in- jured, compensation is to be made to the party injured by re- quiring the special tribunal, either to pay damages, or to do another act beyond its jurisdiction.

We do not think this is to be done in any mode, by any tribunal, certainly not by a Chancery Court by a decree.    We therefore affirm the decision of the Chancellor, dismissing this bill.                    DECREE AFFIRMED WITH COSTS.